## BUFFALO BAYOU, BRAZOS AND COLORADO RAILROAD COMPANY v. GEORGE A. FERRIS.

It cannot be questioned that a railroad for travel or the transportation of produce for the country at large, is a " public use," for the construction of which private property may be taken, upon adequate compensation therefor being made.

That the road for the construction of which, the property when taken is to be applied, is a corporation of private individuals, to whose benefit the profits of the road, when complete, will alone accrue, furnishes no valid objection to such appropriation of private property.

If a grant of power by the legislature to a railroad company, to take and apply private property for the construction of their road, is in accordance with the restrictions and conditions provided by the constitution in such cases, and there has been no abuse of the power by the company in the exercise of the right; it cannot be said that the company, by entering upon and appropriating private property, which, by their charter, they are authorized to take, committed a trespass; but otherwise, if the power granted is not in accordance with the restrictions and conditions provided by the constitution authorizing the taking of private property for public use.

The constitution does not prescribe a rule for determining what constitutes adequate compensation for property taken for public use. It may be done in any manner that the legislature in its discretion may prescribe, if the means presented are effectual for fairly ascertaining the adequate compensation; therefore a charter providing that the compensation shall be ascertained by commissioners appointed by the District Court, instead of by the finding of a jury, is not in violation of the constitution.

The constitutional provision that the " right of trial by jury shall remain inviolate," does not apply to the case of taking private property for public use, but to suits in courts of justice, and to serve known and fixed modes of judicial proceedings, for the trial of issues of fact in civil and criminal causes in courts of justice.

See this case for the provision of a railroad charter, providing a mode for determining the amount of compensation to be given for private property taken for the use of the road, which was held in violation of that clause of the constitution which provides that no person's property shall be taken or applied to public use without adequate compensation.

An execution on a judgment to be rendered at least two terms of the District Court subsequent to the taking of the property, cannot be considered as adequate compensation; nor can a means of payment, which may prove of doubtful or uncertain efficacy, be regarded as such compensation. The property must be paid for when taken, or within a reasonable time thereafter; and the making of the compensation must be as absolutely certain as the property is taken.

In estimating the compensation to be given to the owner of land taken for public improvement, the advantages that may accrue to other land of the owner in the neighborhood, by reason of such improvement, cannot be taken into consideration. The owner is entitled to the intrinsic value of the land so taken, without reference to the profit or advantage from the construction of the improvement for which it was taken.

The owner is also entitled to such damages, if any, as are occasioned to the remainder of the tract of which the land taken was a part, and in estimating these damages, the benefits and advantages that the remainder of the tract will derive from the improvement are legitimate subjects of consideration.

A railroad company being sued for trespass, it was urged that although their charter may not have made provision for adequate compensation for the property taken, yet in the absence of such provision the company were still authorized to enter upon and take such land as they required to construct the road; and though they might have been restrained from doing so by injunction, yet they were acting under and in conformity with law, and cannot be regarded as trespassers; and consequently an action of trespass would not lie against them for such entry and taking; *held*, that although this doctrine seems to be sustained by high authority, yet the court feel constrained to dissent from it.

Unless adequate compensation has been provided for any interference with private property, it matters not under what pretence is an injury done to the owner for which he is entitled to redress " by due course of law."

APPEAL from Harris. Tried below before the Hon. Peter W. Gray.

Appellee sued appellant in the District Court of Fort Bend county, alleging that he was the owner of certain premises constituting the homestead of the plaintiff and situated in the town of Richmond in said Fort Bend county; that the defendant, the Buffalo Bayou, Brazos and Colorado Railway Company was a body corporate, established and created by the legislature of the State of Texas, and was engaged in the construction of a railway under its charter; and that said company, by its agents, with force and arms, had entered upon and taken forcible possession of a portion of said premises of plaintiff for the purpose of constructing a road bed for the railway of said company, and had constructed such road bed, and continued to hold possession of said portion of said premises, and plaintiff claimed damages against defendant for the said trespass upon his premises.

Defendant pleaded in abatement, that the Buffalo Bayou, Brazos

and Colorado Railway Company, by its charter, was authorized to construct, own and maintain a railway over the route designated in said charter and amendment thereto, set out in the plea that, by the act of incorporation, it is made lawful for the company to enter upon and purchase, or otherwise take and hold any land necessary for the purpose of locating, constructing and maintaining said railway—not exceeding fifty yards in width for the road of the railway, and that said company should pay such compensation to the owner of the land so taken as should be determined in the manner provided for in the 8th section of said act of incorporation, of which said section the following is a copy, to wit: Section 8th. "That any person, when land has been taken as aforesaid, may apply to the District Court of the county in which such land is situated, for the appointment of, and said court shall thereupon appoint three disinterested freeholders of the county, who shall appoint a time and place to hear the applicant and the company, to whom shall be given reasonable notice, by the court, of said time and place; and said freeholders shall, after being sworn, and after hearing the parties, determine the amount of compensation as aforesaid, and make return of their award to said court at its next term; and said award may be confirmed, or for any sufficient reason rejected by said court, in the same manner as awards of arbitrators under a rule of court; and if confirmed by the court, judgment shall issue thereon as in other cases. In determining the amount of compensation to be paid as aforesaid, said freeholders shall be governed by the actual value of the land at the time it was taken, taking into consideration the benefit or injury done to other neighboring land of the owner by the establishment of said railway. If in any case the amount found by the arbitrators shall not exceed the amount proved to have been offered by said company to the owner prior to his application to the court, the owner shall pay the costs of the proceedings, otherwise the company shall pay the same."

And the defendant alleged that the land taken by said company and mentioned in plaintiff's petition, was necessary for the location, construction, running and maintaining of the railway, provided for in said act of incorporation and said amendment thereto, and

is for the road bed of such railway—does not exceed twenty yards in width, and that by reason of the premises the court had not power to hear and determine said matters in said action, and had not jurisdiction of plaintiff's case. Defendant, also, by exceptions to plaintiff's petition presented the same questions as raised by the plea in abatement. Defendant also filed a general denial, and by answer also set up the special provision contained in the 8th section of defendant's charter, prescribing the matters to be taken into consideration in estimating the damages of a party whose land has been taken by the company for its railway, to-wit: "that the values should be governed by the actual value of the land at the time it was taken, taking into consideration the benefit or injury done to other neighboring lands of the owner by the establishment of the railway;" that the value of the land taken by defendant, at the time it was taken, was not more than twenty dollars; that the plaintiff was the owner of a large quantity of land and town lots in the town of Richmond, in the neighborhood of said railway and its vicinity, and that by the establishment of the railway the said neighboring lands owned by plaintiff had been benefitted and enhanced in value to the amount of ten thousand dollars.

Plaintiff filed a general exception to defendant's plea in abatement, and the court sustained the exception, and also overruled defendant's exceptions to plaintiff's petition; and the plaintiff recovered a judgment for five hundred dollars damages. At the trial defendant asked the court to charge the jury in the language of the 8th section of defendant's charter, as to the rule that should govern the jury in estimating the damages done to the plaintiff by defendant, which charge the court refused to give, but charged that the jury would only consider the effect of the construction of the railway upon the value of the particular lot or lots over which the railway was constructed.

Defendant appealed, and assigned for error: First. That the court erred in sustaining plaintiff's exceptions to defendant's plea in abatement. Second. The court erred in overruling defendant's exceptions to plaintiff's petition. Third. The court erred in its charge to the jury, and especially as to the matters they should

take into consideration in estimating the damages. Fourth. The court erred in refusing to give the charge asked by the defendant.

The venue was changed from Fort Bend to Harris.

*H. N. & M. M. Potter*, for appellants. On first assignment of error, for the charter of defendants see acts Third Legislature, page 194; special acts of Fourth Legislature, extra session, page 3.

We suppose it is now an admitted proposition that under the usual grants of power contained in charters of railway companies, such companies have the right to condemn or take in the manner provided by their charters or other laws of the State, such land as may be necessary for their road-ways; and that such appropriation of private property, is an application of it to public use, as contemplated by section 14 article 1 of the constitution of this State. (2 Kent Com., 339; Pierce on American Railroad Law, 147, 150; Bloodgood v. the Mohawk and Hudson Railroad Company, 14th Wend., 51; Beekman v. the Saratoga and Schenectady Railroad Company, 3 Paige, 45; Wheelock v. Young, 4 Wend., 650.) The defendant, then, had the right to take the land, and the question is how shall the damages be ascertained.

The legal proposition contained in the plea in abatement is that the legislature having in the eighth section of the charter of defendants, provided a particular mode of procedure for ascertaining the damages done to a party whose land should be taken, the plaintiff had no right to resort to any other mode, or to an action of trespass in the District Court. The company by its servants and agents was acting within the provisions of the authority contained in its charter. (Beekman v. Saratoga and Schenectady Railroad Company, 3 Paige, 45; Stevens v. Middlesex Canal, 12 Mass., 466; Stowell v. Flagg, 11 Mass., 364; Wheelock v. Young, 4 Wend., 650; Mason v. Kennebec and Portland Railroad Company, 31 Maine Rep., 215; in 1 American Railway cases, 163 and 164 and notes of cases, page 166 *et seq.;* Aldrich v. the Cheshire Railroad Company, 1 Foster's N. H. Rep., 359; 1 American Railroad Cases, 208 and 209; Pierce on American Railroad Law, 166, 168.) In Dwaris on statutes, 477, it is

said : "It is, as a maxim, generally true, that if an affirmative statute which is introductive of a new law, direct a thing to be done in a certain manner, that thing shall not, even although there are no negative words, be done in any other manner." The proceedings provided for in the charter of defendants for ascertaining the damages done to parties whose lands should be taken by the company for its purposes was the introduction of a new law, and is the exclusion of all other modes of proceedings for that purpose. We are not aware that the constitutionality of our road laws, providing for the appointment of viewers and appraisers by the county courts for the purpose of laying out public highways and assessing the damages done to parties whose lands are taken, has been questioned, or that there is any other mode of procedure in such matters, except that provided by the road laws. (Hart. Dig., art. 2828, 2829, 2830, 2834; acts 5th Legislature, pages 37 and 38, sec. 6, 7, 8, 9; acts 7th Legislature, page 135, sec. 6, 7, 8, 9.) The legislature having, in the charter of defendants provided the mode in which damages shall be ascertained and paid, and the remedy provided being reasonable, the defendant had the right to enter upon and use the land for the purpose of constructing its road, without first making compensation for the land. (Jerome v. Ross, 7 Johns., Ch. Rep., 330; Rogers v. Bradshaw, 20 Johns., 737; Wheelock v. Young, 4 Wend., 650; Bloodgood v. Mohawk and Hudson Railroad Company, 14 Wend, 51.) This case sets out the provisions of law under which the land was taken; and says that a proper valuation of damages cannot be made until the road is constructed. Also illustrates by reference to the highway laws of New York, which provide for appropriating and using the land before the value or damage for taking it is paid or ascertained, and shows that the parties whose land is taken have to procure the damages to be assessed in the mode pointed out by law. The town or county is not required to be the actor in ascertaining the damage, but the party whose land has been taken for public use. So under the charter of defendant the company cannot commence the proceedings to ascertain the damage done to a party whose land is necessary or has been taken for the use of the road, but the party injured must apply to the District Court

for the appointment of commissioners to value the damage. (Railroad Company v. Davis, 2 Dev., and Batt. N. C. Law Rep., 451, 460, 461, 462, 463.) This is the construction given to English statutes in like cases, and frequently, as Lord Denman observed, the amount of compensation cannot be ascertained until the work is done. (Lester v. Lobbey, 7 Adol. and Ellis, 124.)

It is no objection to the provisions of the charter of defendant, that it does not provide for the trial of the question of damages by a jury. The general provisions in the federal and State constitutions, securing the right of trial by jury, do not prohibit the creation of special tribunals for the assessment of damages where property is taken for public purposes, by or under the authority of the State, under its right of eminent domain. These constitutional provisions in relation to trial by jury, relate to the trial of issues of fact in civil and criminal causes in a court. (Pierce on American Railroad Law, 166; Beekman v. Saratoga and Schenectady Railroad Company, 3 Paige, 45.) The able argument in this case, compiles the provisions of the laws of many of the States in relation to the mode of ascertaining damages in such matters, and shows that in the most of the old States the damages are ascertained by commissioners or viewers appointed by some authority provided for that purpose by the charters of the companies, or by the general laws of the several States. And for the same purpose we refer also to Pierce on American Railroad Law, 188, 189, 190, 195, 196.

If we are not correct in these positions, is it not true that the highway laws and all the railroad charters of this State, are inoperative and of no effect, from the fact that they contain no constitutional provisions by which the condemnation of the lands over which it is necessary for the roads to pass, can be procured or enforced? That the other railway charters in this State contain the same provisions on this subject as the charter of appellant, see Special Laws 4th Legislature, page 143, sec. 6 and 7; Special Laws 4th Legislature, extra session, pages 13 and 14, sec. 6 and 7; same session, page 52, sec. 7 and 8; same session, pages 58 and 59, sec. 7 and 8; same session, page 66, sec. 7 and 8; same session, page 70, sec. 7 and 8; same session, pages 76 and 77,

sec. 7 and 8; and in fact all the charters. We submit that the court erred in sustaining plaintiff's exception to defendant's plea in abatement. The demurrer acknowledging the truth of the matters stated in the plea, the court had no jurisdiction of the cause.

On the second assignment of error, the petition of plaintiff disclosed sufficient to show that the defendant was a railway company duly incorporated under the laws of the State, and as such entered upon the land of plaintiff for the purpose of constructing its road under the provisions of its charter; such being the case, the exceptions of defendant to the petition of plaintiff presented the same questions that we have argued on the first assignment of errors, and we submit this assignment upon the authorities cited in support of the first assignment.

In reply to the point made in the argument for the appellee, that the 8th section of the charter of appellant is invalid because it provides that in determining the amount of compensation, the freeholders shall be governed by the actual value of the land at the time it was taken, taking into consideration the benefit or injury done to other neighboring land of the owner by the establishment of said railway, we say the legislature has the power to provide in this respect. (Pennsylvania Railroad v. Hurter, 8 Barr, 445; Commonwealth v. Coombs, 2 Mars., 489; Alton and Sangamon, R. R. Co. v. Carpenter, 14 Ill., 190; Pierce on American Railroad Law, 206, 212.)

*E. A. Palmer*, for appellee. Our objection to the provisions of the charter, are, 1st. That it enables the company to take individual property without adequate compensation being made at the time of taking.

The charter gives the company the right to *take* and *hold* the land without any act on its part towards fixing the compensation and leaves the party to a miserably defective remedy. It first deprives him of his property, and then leaves him to pursue his remedy or not, as he may deem most advisable upon considering the company's disposition and ability to contend with him, or *pay him*.

The Constitution says no person's property shall be taken or applied to public use, without adequate compensation being made, unless by the consent of such person. That no citizen of this State shall be deprived of property, except by due course of the law of the land.

This charter says, take and hold the land first, and get the consent, or leave the party to his remedy afterwards; deprive the party of his property first, and litigate with him upon the law of the land, while the company enjoys the full use, possession and title of the property.

2. It not only gives the company the right to take and hold the land without first making compensation, but throws delays and obstacles around the remedy provided, which should be held in direct violation of the spirit of the constitution.

The injured party cannot present his case for relief, until the first term of the District Court, which may be six months after the injury. Freeholders are appointed who cannot hear the case until reasonable notice has been served on the company, although the president may be absent, or a non-resident, as has been frequently the case. Their award cannot be made or returned until the second term, and then the party has nothing but a simple judgment, which he may or may not be able to collect according to the *solvency* of the company and its disposition to pay. This, we most respectfully submit, is leaving the party to collect his compensation "by due course of the law of the land," after taking and holding his land contrary to the constitution. Art. 1, sec. 14-16. (Doughty v. Somerville and Easton R. R. Co., 3 Halsted, Ch. R. (N. J.) 51; 18 Wend., p. 9-18.)

Under the constitution of New Jersey, it has been decided that an act of the legislature cannot authorize a railroad company to take land without *first* making compensation therefor. (3 Halsted, Ch. R., (N. J.) 51.)

In the other States, it was held that there must be *ample* and *certain* provision for *full* and *adequate* compensation without any *unreasonable* delay. (Rogers v. Bradshaw, 20 Johns., 735; 18 Wend., R., 9; Pierce Am. R. R. Law, p. 162, note 1.)

In several of the States it has been held, that the railroad com-

pany may take possession so far as to make the preliminary surveys and laying out the road, &c., preparatory to ascertaining the amount of compensation, but in this case they have not only gone this far, but have constructed their road and taken full possession, and claim the right to hold the same. (Bloodgood v. The Mohawk and Hudson R. R. Co., 18 Wend., 9; Pierce Am. R. R. law, p. 161–166, and cases cited.)

In Massachusetts and other States, where this doctrine has been established, it was also held that the corporation only had the servitude, easement or right of way; that the proprietor was still' owner of the soil, and had exclusive right of property in the land, and could maintain trespass for any injury to the soil. (6 Pick., 56; 1 Pick., 123.)

3. The next objection to the charter, is, that "in determining the amount of compensation the freeholders shall be governed by the actual value of the land at the time it was taken, taking into consideration the benefit or injury done to other *neighboring* land of the owner by the establishment of said railway."

If the compensation can be settled by the benefit to neighboring lands, why not say to any other lands in the State or along the line of said road?

The constitution requires the compensation to be paid in money, not in real or imaginary benefits derived from such improvements. (6 Barb. Sup. Court R., 209; 7 Dana, 81; 5 Dana, 28; 5 Indiana, (Porter) 543.)

If this provision of their charter is constitutional, it gives the company the right to pull down his house over his head and take forcible possession, and leave him to his remedy with all its delays, without any adequate fund to which he can look for his compensation. In such a case, a *jury* would give damages in the true sense, but the commissioners would be governed by the soulless provisions of its charter relative to remote benefits. We think, notwithstanding the decisions shown by the appellants, that our courts should be cautious in allowing parties to be deprived of their rights without jury trials.

Second proposition: 'That the provisions of the charter, if constitutional, provide merely a cumulative remedy, but do not take

away the common law remedy. (Carr v. Georgia R. & B. Co., 1 Kelly, 524; Partition, Hart, p. 793; 16 Tex., 364; Right of Property, Hart., p. 850; McKay v. Treadwell, 8 Tex., 176.)

If the party is first deprived of his property, and then left to his remedy for compensation, he should certainly have the right to choose his remedy.

The statutes relative to trial of the right of property, and relative to partition, were intended to provide summary remedies. But this court has held that parties may either avail themselves of these remedies or sue in separate actions. (McKay v. Treadwell, 8 Tex., 176; 16 Tex., 364.)

The constitution gives the District Court original jurisdiction of all *suits, complaints and pleas whatever*, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to one hundred dollars exclusive of interest. (Art. 4, sec. 10: see Hart., art. 641–646–667–703.)

The District Court having jurisdiction should have granted relief, even if it should be required to be done by the appointment of commissioners.

MOORE, J. It cannot be questioned that a railroad for general travel, or the transportation of produce for the country at large, is a "public use," for the construction of which private property may be taken or applied, upon adequate compensation for it being made. That the road for the construction of which, the property when taken is to be applied, is a corporation of private individuals, to whose benefit the profits of the road, when complete, will alone accrue, furnishes no valid objection to such appropriation of private property. One of the chief occasions for the exercise of this right of eminent domain by the State, is, in creating the necessary facilities for intercommunication for purposes of travel and commerce. In such cases the object of the legislative grant, authorizing the application of private property, is the public benefit derived from the contemplated improvement, whether such improvement is to be effected directly by the agents of the government, or through the medium of corporate bodies, or of individual

enterprise. If the grant of power, by the legislature to the appellants, to take and apply private property for the construction of their road, is in accordance with the restrictions and conditions under which private property, by the constitution, may be taken, and there has been no abuse of power by appellants, in the exercise of the right conferred upon them, it cannot be said that any wrong has been done by them to appellee, or that by entering upon and appropriating the property, which by their charter they were authorized to take, they had committed a trespass. It cannot therefore be maintained, as is insisted, that the manner of ascertaining and assessing the amount of compensation that should be made to appellee for the property taken from him, as prescribed by the act of the legislature granting appellants their charter, is unconstitutional, because it does not require or authorize such compensation to be determined by the finding of a jury. The legislature cannot take private property without adequate compensation being made. But the constitution does not prescribe a rule for determining what constitutes adequate compensation. It may be done in any manner that the legislature in its discretion may prescribe, if the means prescribed are effectual for fairly ascertaining the adequate compensation which the owner of the property should receive. The constitutional provision, that, "the right of trial by jury shall remain inviolate," does not apply to the case of taking private property for public use, but to suits in courts of justice; to some known and fixed mode of judicial proceeding, for the trial of issues of fact in civil and criminal causes in courts of justice. It was intended as a constitutional safeguard in the trial of those cases for which it is stipulated, that the courts shall remain open, and wherein a party shall have remedy by due couse of law. (Beekman v. Saratoga & Schenectady Railroad Company, 3 Paige 45; Bonaparte v. C & A. Railway, Bald. C. C. R., 205; Bloodgood v. M. & H. Railway, 14 Wend. 51; 18 Id. 9; Sternes v. Middlesex Canal, 12 Mass. 466; Wheelock v. Young, 4 Wend., 650; Stowell v. Flagg, 11 Mass. 364; Mason v. Kennebec & Portland Railroad Company, 31 Maine, 215; Aldrich v. The Cheshire Railroad Company, 1 Foster, (N. H.,) Reps., 359.)

It is not pretended that appellants, in appropriating appellee's

property for the construction of their road, went beyond the authority conferred upon them by their charter. And if this is in other respects constitutional, the exceptions to the plea in abatement should not have been sustained. But it is also urged, that so much of the charter as authorizes appellants to enter upon and take individual property, is unconstitutional, because it does not make provision for adequate compensation to the owner of the property. By their charter appellants are authorized to enter upon and purchase, or otherwise take and hold any land necessary for the purpose of locating, constructing and maintaining their railway, not exceeding forty yards in width, for which such compensation should be made, (if not agreed upon by the parties,) as should be determined in the manner provided for in the eighth section of said Charter, which is as follows: "That any person whose land has been taken as aforesaid may apply to the District Court of the county in which such land is situated for the appointment, and said court shall thereupon appoint three disinterested freeholders of the county, who shall appoint a time and place to hear the applicant and the company, to whom shall be given reasonable notice by the court, of said time and place, and said freeholders shall, after being sworn, and after hearing the parties, determine the amount of compensation as aforesaid, and make return of their award to said court at its next term; and said award may be confirmed, or for any sufficient reason rejected by said court, in the same manner as the awards of arbitrators under a rule of court; and if confirmed by the court, execution shall be issued thereon as in other cases. In determining the amount of compensation to be paid as aforesaid, said freeholders shall be governed by the actual value of the land at the time it was taken——taking into consideration the benefit or injury done to the other neighboring lands of the owner, by the establishment of said railroad. If in any case the amount found by the arbitrators shall not exceed the amount proved to have been offered by said company to the owner prior to his application to the court, the owner shall pay the cost of the proceeding, otherwise the company shall pay the same."

It is insisted that the charter fails to make provision for

adequate compensation to the owners of property, which, by it, the railroad company is authorized to take. First, because the company are authorized to take and hold the land without simultaneously making compensation for it, while the owner of the property can only enforce payment of the amount awarded him by an execution against the company, and this without any guaranty of their solvency, and after a delay of at least two terms of the District Court. Second, it does not require that the value of the property taken shall be paid in money, but permits this to be done by an estimate, by the commissioners, of the speculative and contingent benefits that may accrue to other land of the owner in the neighborhood, by the construction of the road. With due respect for the legislative department of the government, we feel constrained to say, that, in our opinion, these objections to this part of appellant's charter are sound. The language of the constitution most certainly indicates that the taking of private property, and the making of compensation, shall be concurrent acts. There may be, and doubtless are cases where the amount of damages to which the owner will be entitled cannot be ascertained until the property has been taken. And frequently it may occur that it will not be improper, owing to the object and purpose for which it is done, that the property may be taken into possession before the payment for it is made. But, in such cases, if an appropriate remedy is provided upon an adequate and certain fund, whereby the owner may obtain remuneration without unnecessary delay; this provision may be regarded as "adequate compensation being made" to him when his property is taken. When compensation for the property taken is to be made by the State, an appropriation of a fund for its payment, as soon as it could be ascertained by a proceeding authorized for that purpose, might probably be held a compliance with the constitution. But where, although the property is taken for a public use, compensation for it must be made by a private corporation, an execution on a judgment to be rendered at least two terms subsequent to the taking of the property, cannot be considered as adequate compensation. Although we may hold that the constitution did not intend to use the word "compensation" as altogether synonymous with that of "pay-

ment," yet we cannot regard a means of procuring payment, which may, to say the least of it, prove to be of doubtful and uncertain efficacy, as *adequate* compensation. To constitute the means of enforcing payment at a future day, as adequate for the purpose of compensation, it must be guaranteed by something more certain than the continuing solvency of a railroad company. It could never have been the intention of the framers of the constitution to arrest from individuals, by the strong arm of the government, their property, and leave them to look for compensation to the precarious and uncertain responsibility of a railroad company. The property must be paid for when taken, or within a reasonable time thereafter; and the making of compensation must be as absolutely certain as that the property is taken. (Carr v. Geo. R. R. & B. Co., 1 Kelly, 524; Young v. Harrison, 6 Geo., 130; Bloodgood v. M. & H. R. R. Co., 18 Wend., 9; 2 Kent, 339, note, and cases there cited.)

It may be urged, however, that, although the charter may not have made provision for adequate compensation to appellee for the property taken, yet, in the absence of such provision, the company were still authorized to enter and take such land as they required to construct their road; and although they might have been restrained from doing so by injunction, they were acting under and in conformity with law, and cannot be regarded as trespassers, and consequently an action cannot be maintained against them for the alleged trespass with which they are charged. Although this doctrine seems to be sustained by high authority, we feel constrained to dissent from it. (Rogers v. Bradshaw, 20 Johns., 735; Jerome v. Ross, 7 Johns., Ch. R., 344.) The State is as impotent as an individual to take private property for any purpose without the owner's consent, unless adequate compensation is made for it. Unless this provision of the constitution has been complied with, any interference with private property, it matters not under what pretence, is an injury done to the owner, for which he is entitled to redress "by due course of law." The constitution gives a right of action to every one who has received an injury in his lands, goods, &c.; and it cannot be said that an individual's land can be taken from him, let it be done by whom or for what pur-

pose it may, without injury, except where adequate compensation has been made to him for so doing. Nor is it any answer to this proposition to say that the taking of his property is not illegal, because the constitution has guaranteed to him compensation for it, and the legislature is bound to secure it to him, and this may be done by a future act. But is the obligation, we may ask, to make him compensation any stronger upon a future legislature than it was on that one by whose authority his property has been taken; and if it has failed to make a constitutional provision for his compensation, what assurance can he have that any future one will do so? It was, however, to place the rights of property upon higher grounds than the mere legislative sense of justice and equity, that this prohibition upon legislative power was embodied in the bill of rights.

Nor do we think that land taken for public use can be adequately compensated for merely by the advantages that may accrue to other land of the owner in the neighborhood, by reason of the public improvement for the construction of which it was taken. The constitution contemplates that private property shall not be taken from its owner without payment of its just value being made to him. And such payment must, as all other payments, be made in money—the only constitutional currency for this purpose. The owner of land taken for public use is entitled to the intrinsic value of the land so taken, without reference to the profit or advantage that he may derive from the construction of the improvement for which it is taken. He is also, however, entitled to such damages, if any, as are occasioned to the remainder of the tract, of which the land taken was a part, by reason of its appropriation for the purpose for which it was taken. In estimating these damages, the benefits and advantages that the remainder of the tract will derive from the improvement are legitimate subjects of consideration, and are to be estimated in determining the true amount of damages that have accrued to the owner by the appropriation of his property for the purpose for which it has been taken. But this does not affect the claim for the intrinsic value of the land taken. (Jacob v. The City of Louisville, 9 Dana, 114; The People v. The Mayor of Brooklyn, 6 Bab., Sup. C., 209; Rogers v. R. R.

Co., 3 Maine, 310; State v. Miller, 3 Zab., 383; Hatch v. R. R., 25 Vt., 49; Moale v. Baltimore, 5 Md., 314.)

We conclude, therefore, that the exceptions to appellant's plea in abatement were properly sustained; that they have no right to complain of the charge; that there is no error in the record for which the judgment should be reversed, and it is therefore affirmed.

Judgment affirmed.