SOUTHERN COTTON PRESS AND MFG. CO. v. GALVESTON WHARF CO.

(No. 2238.)

APPEAL from Galveston County. Opinion by WILLSON, J.

McLEMORE & CAMPBELL, for appellant.

BALLINGER, MOTT & TERRY, for appellee.

§ **256.** *Condemnation of right of way; compensation to owner of land condemned; rules as to; case stated.* On July 6, 1885, the wharf company presented its appli-

cation, under the statute, to the county judge of Galveston county, asking that commissioners be appointed to assess damages for right of way across blocks of ground numbered 635 and 694 in Galveston city, belonging to the cotton press company, and that portions of said blocks of ground be condemned. Representing that the legislature, August 4, 1870, passed an act entitled an "Act granting to the Galveston Wharf Company the right to make railroad connections with its wharves and the railroads entering the city of Galveston;" that the wharf company obtained a *license* from the cotton press company to build a railroad across blocks 635 and 694 in Galveston city, then and now belonging to the cotton press company; that the cotton press company seeks to withdraw the license and demands that the wharf company either remove its track or pay an exorbitant rental for the right of way, and asked that a strip of fifty feet through blocks 635 and 694 be condemned, said strip to run diagonally three hundred feet across each block, the strip through block 694 being on a seven degrees and ten minutes curve, or twenty-five feet on each side of present railroad track.

The judge appointed the commissioners to assess the damages, and they, after hearing evidence offered by both parties, made a majority and minority report to the judge, the majority of the commissioners assessing the damages at $8,000 and the minority at $6,600. Both parties appealed to the county court from the decisions of the commissioners. In the county court the cotton press company filed exceptions to the application to condemn, the appointment of commissioners thereunder and the report of the commissioners, because chapter 8 of title 84, Revised Statutes, under which the application, appointment and reports are made, or so much thereof as relates to the condemning of only a portion of a person's real estate for right of way, and the assessing of damages therefor, fails to make provision for adequate compensation to the owner of said real estate when only a

portion thereof is to be condemned. The court overruled the exception.

The cotton press company in its answer objected to the condemning of its said property for the following reasons, among others, to wit: "That it leased said blocks to the wharf company soon after the act of August 4, 1870, with the understanding that the wharf company could use them temporarily to make the connection by railroad with its wharves and the railroads entering Galveston city, and the wharf company promised to make other connection with said railroads and remove its railroad from said blocks as soon as the other connections were made; that the wharf company, on the 30th day of April, 1885, notified the cotton press company that it on that day surrendered the blocks to the cotton press company; that before it notified the cotton press company of the surrender of said blocks, it had made other connections with the railroads entering Galveston city; and the wharf company, by selecting and determining its location for the purposes of connecting its wharves by railroad with other railroads entering Galveston city over other lands than the lands it now seeks to condemn for said purpose, and making its connections over them, and then surrendering its possession of said blocks to the cotton press company, has exhausted its right of location, and has no power under said act to condemn the land it now seeks to condemn, and is estopped from condemning said land by reason of said executed agreement between the parties." The wharf company excepted to this defense and the exception was sustained by the court. The trial of the case resulted in the jury assessing the damages at $7,000, and the court, by its judgment, condemned the property. The cotton press company made motion for new trial, which was refused, and the case appealed to this court.

Appellant's first assignment of error and propositions thereunder are as follows:

"The court erred in overruling defendant's exceptions,

filed November 24, 1885. The following are the exceptions: ' Now comes the Southern Cotton Press and Manufacturing Company and excepts to the Galveston Wharf Company's application to condemn a *portion* of two tracts or blocks of land in Galveston city, owned by defendant, described in said application, and to appoint commissioners to assess damages for right of way, and to the reports of the commissioners appointed thereunder, because chapter 8 of title 84, Revised Statutes of the state of Texas, under which said application, appointment and reports are made, or so much thereof as relates to the condemning of only a portion of a person's real estate for right of way and the assessing of damages therefor, fails to make provision for adequate compensation to the owner of the real estate, when only a portion thereof is to be condemned, which, by it, the railroad company is authorized to take, and is in violation of the constitution of this state and of the United States, because it does not require that the value of the property taken shall be paid in money, but permits this to be done by an estimate of the speculative and contingent benefits that may accrue to the remaining portions of the owner's real estate by the construction of the road, when only a portion of a person's real estate is condemned.

"FIRST PROPOSITION UNDER FIRST ASSIGNMENT OF ERROR.

"The statutes of the state of Texas, when only a portion of a person's real estate is condemned for right of way, provides that the benefit the remaining portion of the real estate derives from the taking of the part condemned shall be used in compensating the owner for the property taken from him for public use.

"SECOND PROPOSITION UNDER FIRST ASSIGNMENT OF ERROR.

"The real or imaginary benefits the remaining portions of a person's real estate derives from condemning the part taken for right of way is not such compensation to the owner for the taking of his property for public use

as the constitution requires shall be made before the property can be taken."

·*Held:* Section 17 of article 1 of the constitution of this state provides that no person's property shall be taken, etc., for public use without adequate compensation being made, and when taken, except for the use of the state, such compensation shall first be made or secured by a deposit of money. We agree with counsel for appellant that the compensation guarantied by this provision of the constitution must be made in *money,* and not in real or imaginary benefit derived from improvements. [R. R. Co. v. Ferris, 26 Tex. 588; City of Paris v. Mason, 37 Tex. 447.] "The owner of the property taken is entitled to compensation in *money* for the *value* of such property, without regard to any benefit which may accrue to him by reason of such taking. The adequate compensation guarantied by the constitution for the property taken, which is the fair market value of such property, must be ascertained and paid, regardless of any speculative advantage to flow from its use. If, however, in addition to the intrinsic value of the property, the owner claims indemnity for the losses and inconveniences which will incidentally devolve upon him in consequence of such appropriation of his property, in estimating those losses and inconveniences, the profits, advantages and conveniences which will result to him from the uses to which the property is applied are also to be estimated, and the excess of the former over the latter is the true amount of incidental damages." [2 Wood's R'y Law, § 262.] This we understand to be the meaning of our statute upon the subject. [R. S. arts. 4193, 4194, 4196.] As we construe the provisions of the statute, they do not authorize the taking of property for public use, without adequate compensation therefor, in money, to the owner, and these provisions are in harmony with the constitution. In his charge to the jury, the trial judge correctly explained the rules by which the jury should be governed in ascertaining and estimating the damages, and

the jury was directed, in any event, to find for appellant the market value of the land taken. We regard the charge of the court as a clear and correct exposition of the law of the case. [W. & W. Con. Rep. §§ 266, 267; 2 W. Con. Rep. § 365; *ante,* § 59; R. R. Co. v. Mathews, 60 Tex. 215; R. R. Co. v. Ferris, 26 Tex. 588.] Appellant's first assignment of error is not maintainable.

§ 257. *Right of condemnation not barred by a previous agreement in relation thereto, between the parties.* Appellant assigns that the court erred in sustaining appellee's exception to appellant's objection No. 10, said objection being as follows:

"10. The Galveston Wharf Company, soon after the passing of said act by the legislature, applied to the Southern Cotton Press and Manufacturing Company for the privilege of constructing a railroad over said blocks of land, to be used temporarily, and agreed to remove it therefrom as soon as it had made other connection between its wharves and the railroads entering Galveston city. The Southern Cotton Press and Manufacturing Company granted the privilege, with the understanding that it was temporary, and that the wharf company would remove said railroad therefrom as it promised to do. The wharf company used said land for said purpose from September 1, 1871, for ten years, without any charge therefor. On June 30, 1882, the Southern Cotton Press and Manufacturing Company leased said blocks 635 and 694 to the Galveston Wharf Company, for fourteen months, to commence July 1, 1882, and to end August 31, 1883, giving the privilege to said wharf company to vacate said premises at any time before August 31, 1883, on paying all rent due to the date of such vacating. Said lease was made with the understanding that said wharf company would make other connection with its wharves and the terminus or depot of the Galveston, Houston & Henderson Railroad and other railroads entering Galveston over other lands, and promised to make such connection and remove its railroad from said blocks as soon as

other connections were made. That said wharf company, subsequent to the expiration of said lease, made. other connections with railroads entering Galveston city, and after making such other connections on the 13th day of April, 1885, notified the Southern Cotton Press and Manufacturing Company that it on that day surrendered said block to the Southern Cotton Press and Manufacturing Company. The wharf company having thus leased from the Southern Cotton Press Company said blocks temporarily, and until it could determine the location over which to connect its wharves with the G., H. & H. R. R. depot or terminus, and all other railroads entering the city of Galveston, and afterwards selecting and determining its location for said purpose over other lands, and making its connections over them, and then, after said connection was made, surrendering its possession of said blocks to the Southern Cotton Press and Manufacturing Company, has exhausted its right of location, and has no power under said act of the legislature to condemn the land it is now seeking to condemn in these proceedings, and is now estopped from condemning said land by reason of said executed agreement between the said parties."

Appellee's exception to the foregoing objection, and which was sustained by the court, is as follows:

"Ninth. This being a proceeding for condemnation under the statute in such case made and provided, none of the matters and things alleged in objection 10 can be set up to defeat plaintiff's right of condemnation. That the whole of objection 10 is irrelevant and not pertinent to the issue in this cause."

*Held:* The court did not err in sustaining the exception. The previous transactions between the parties in relation to the right of way over the lots, as set forth in said objection 10, could not bar appellee's right to condemn the land for a right of way. As to the issue presented in said objection, that appellee had selected and determined a right of way over other lands, and had

made its connections with the railroads by other routes, and that therefore no necessity or right existed for it to have the land sought to be condemned, it had the full benefit of this issue under objections 5 and 6, and was not injured with reference to said issue by the ruling of the court sustaining the exception to objection 10.

§ 258. *Award of commissioners as evidence.* Appellant's fourth assignment of error is as follows:

"The court erred in allowing plaintiff, over objections of defendant, to read as evidence to the jury the majority and minority reports to the county judge made by the commissioners who were appointed by the judge, on the application of the plaintiff to have the right of way condemned through the blocks in question, and damages assessed, wherein they reported the damages assessed by two of them, and the damages assessed by the other commissioner, different in amounts, and from which assessments by said commissioners both plaintiff and defendant had appealed to the county court. The defendant objected to the reading of said reports to the jury as evidence, because the reports contained but the expression of the opinions of three individuals as to the damage for right of way over the real estate described therein and involved in these proceedings, who have not testified in this case, either orally or by deposition, and no opportunity given the cotton press company to examine them on the matters related in said papers or any other matter involved in this case; and because the papers contain the decisions of three members of the inferior tribunal before which this case was tried, and from which both parties have appealed to the county court, where the case is being tried *de novo*, and therefore ought not to be read in evidence; and, further, because the opinion, as expressed in the reports of the commissioners, was well calculated to and must have influenced the jury that were then investigating the property."

This court has held that where exceptions are taken to the award of commissioners, the question as to what is

the proper amount of damages is one for which a trial *de novo* on appeal is in fact had, and on such trial the award is not admissible evidence to prove the amount of damage. [2 W. Con. Rep. § 139.] But this holding does not go to the extent that the award is not admissible in evidence for other purposes than to prove the amount of damages. The award is the foundation of the appeal; it is the very matter complained of by the appellant; the very matter upon which the issues to be determined are based. For the purpose of understanding the proceeding, the objections made to the award and the issues to be tried, all of the proceedings had before the commissioners would, it seems to us, be competent evidence. If appellant apprehended that injury would result to it upon the issue as to the amount of damages by the admission in evidence of the awards of the commissioners, it should have requested the court to instruct the jury that they could not consider said awards in estimating damages. Having failed to request such instruction, appellant cannot complain that said evidence may have operated to his prejudice upon said issue. It is further to be observed in this connection that it does not appear that said awards were read in evidence for the purpose of affecting the question of damages. Appellee did not introduce or rely upon them as evidence of the amount of damage, but introduced numerous witnesses who testified upon the issue of damages, and we will presume that it was upon the legitimate evidence bearing upon this issue that the finding of the jury is founded.

§ 259. *Corporate powers; province of court to construe charter as to.* It was the province of the court to construe the law granting to appellee corporate powers. It was not competent to have this grant interpreted by a witness. The legislative charter granted appellee shows upon its face that the corporation had the power to construct and operate a railroad, and to condemn the right of way for such purpose, under the same regulations and subject to the same general law as are applicable to other

railroad corporations in the state. [Special Laws 12th Leg. 1870, pp. 102, 103.] Railroads are public highways, and the act granting authority to appellee to construct a railroad under the regulations prescribed by the general railroad law of this state made the purpose of said grant of power a public one in so far as it authorized the construction and operation of a railroad. The court did not err in holding that appellee's charter conferred upon it, the right to condemn the land for public use.

March 12, 1887. Affirmed.