SABINE RIVER AUTHORITY OF TEXAS v. J. P. MCNATT ET AL.

No. A-7956. Decided February 15, 1961.
(342 S.W. 2d Series 741)

H. P. Kucera, N. Alex Bickley, both of Dallas, Byron Tinsley, Lutcher Simmons, both of Orange, and Allen Clark, of Greenville, for petitioner.

Fisher, McLaughlin & Harrison and O. B. Fisher, of Paris and G. C. Harris, of Greenville, for respondent.

MR. JUSTICE STEAKLEY delivered the opinion of the Court.

Respondents by suit and pleas of intervention sought to enjoin Petitioner from exercising eminent domain proceedings in the manner and as authorized by Article 7880-126, Vernon's Ann. Civ. Stats., as amended by the 42nd Legislature in 1931. Constitutionality of the statute was attacked on various grounds, and error was alleged in certain proceedings of petitioner.

The trial court declared the statute "void and unconstitutional for the reasons stated in petitioner's petition," and in the pleas of intervention.

The Court of Civil Appeals felt bound by the decision in White v. Maverick County Water Control and Improvement District, Texas Com. App., 35 S.W. 2d 107, "to hold that Sec. j. Art. 7880-126, Acts 1931, continues as violative of due process," and affirmed on the basis alone. In other respects the court sustained the constitutionality of the statute and upheld the proceedings of petitioner as to which respondents alleged error. 337 S.W. 2d 325. Writ of error was granted to review the due process question. Respondents rely primarily on the decision in White v. Maverick.

In 1925, the 39th Legislature set about to effectively implement Section 59 or Article XVI of the Constitution which was adopted in 1917, and is known as the Conservation Amendment. Acts 1925, Ch. 25. Section 126 of the 1925 Act conferred the right of eminent domain upon districts established under the Act. Amendments followed at the First Called Session of the succeeding Legislature. Acts 1927, 1 C.S., Ch. 107. The 41st Legislature in 1929, in turn, extensively amended the 1925 and 1927 Acts and recited the following in the emergency clause:

"(a)   Said Chapter 25 is the only Act making practical the beneficial operation of the full scope and intent of Section 59 of Article 16 of the Constitution of Texas:

"(b)   Said Chapter 107 materially aids and clairifies the intent of said Chapter 25:

"(c)   This Act is intended materially to aid in the practical operation of said Chapter 25 in keeping with all pertinent provisions of the Constitution of Texas." (Acts, 1929, Ch. 280, p. 613.)

Section 14 of the 1929 Act established a detailed procedure "for the purposes of condemning land, and other property, easements, and assessing damages * * *," and came upon constitutional attack in White v. Maverick, etc., supra. The opinion of the Commission of Appeals delineated its decision as follows:

"* * * As we have reached the conclusion that the provision for condemnation of lands contained in the section assailed is violative of article 2, section 1, of the Constitution of this state, which prohibits the conferring of judicial power upon executive officers of the government, it is unnecessary that we enter into a discussion of the remaining constitutional objections urged to this portion of the act."

At no point did the Court in White v. Maverick discuss or allude to due process; the criticism of the statutory procedure (which deferred hearing until after filing of the proposed report) related to and strengthened the conclusion that the Legislature did not *intend* to create a court in the 1929 Act. Indeed, the White v. Maverick decision (as pertinent here) can be said to have turned altogether on the question of legislative intent:

"A careful review of the provisions of the act leads us to the conclusion that the Legislature in providing for this board of commissioners of appraisement contemplated the creation of an administrative board rather than of a court. One of the best methods *to ascertain legislative intent* in this respect is to determine whether the system under which the board of appraisement is to function is similar in nature to that usually provided when the Legislature creates a court." (Emphasis added).

Following the decision in White v. Maverick, which was handed down February 4, 1931, the 42nd Legislature, which was then in session, curatively amended the 1925 and 1929 Acts with this declaration of intent in Section 2:

"SEC. 2. (Expressing the reasons for the enactment hereof and designating the Statutory Acts to be amended hereby) * * * "(b) A recent decision by The Supreme Court of Texas has declared the most material provisions of Section 14 of Chapter 280 to be void as constituting a legislative intent to invade the province of the Judicial Department of the State's Government by conferring Judicial functions on an Administrative body in contravention of Section 1 of Article 2 of the Constitution of Texas. The effect of said decision is to render uncertain the means by which a District may assess taxes on a basis of specific benefits; and, will deny to Districts the right to exercise the more practical, economical and equitable procedure for condemnation, intended by the Legislature to be conferred by said Section 14; wherefore, said Section 14 of Chapter 280 hereby is repealed, and in lieu thereof it is provided as follows, viz:"

It is apparent that the Legislature promptly met the decision in White v. Maverick in its continuing effort to provide more expeditious land acquisition procedures for Water Control and Improvement Districts; and we agree with the holding of the Court of Civil Appeals that:

"In the wording of Art. 7880-126, the Legislature made certain that it intended to create and did create a court or tribunal which was to have original jurisdiction of proceedings for condemnation and was to exercise judicial functions as provided in our State Constitution; thereby freeing the 1931 Act from the infirmity above referred to in White's appeal, supra, where merely an administrative body was involved rather than a 'tribunal' vested with judicial powers."

We differ from the Court of Civil Appeals in its interpretation of the decision in White v. Maverick as also holding the 1929 Act invalid as lacking in due process. As before noted, the court pretermitted any consideration of due process (or other constitutional questions), and we come to the due process problem as an original question insofar as this decision is concerned.

The mode of determination of the compensation to be awarded for the taking of property under the 1931 amendment may be summarized as follows:

Interested persons are given notice of the institution of proceedings by the Authority by means of registered mail and newspaper publication, and at the time and place fixed by the District Judge for the hearing of the petition of the Authority for appoint-

ment of the Tribunal all interested persons have opportunity to show good cause why the District Judge should not appoint any or all of the persons nominated in the petition. [Sec. (c)].

The Tribunal appointed by the District Judge is governed by Article 3265 of Title 52 (Eminent Domain) in "assessing the value of property sought to be condemned, damages and compensation benefits," and views, appraises and assesses damages which will justly compensate and liquidate all injuries to affected lands, easements or property rights. [Sec. (j)].

The Tribunal prepares " a specific and detailed proposed report of their findings," and in the proposed report fixes "the times and places, when and where they shall hear objections to their findings as reported." [Sec. (j)].

The Secretary of the District gives notice "forthwith" by newspaper publication once a week for two consecutive weeks, and, in addition, mails written notice to each person whose land or other property is listed in the proposed report, or, in lieu thereof, personal notice may be executed and returned under oath. [Sec. (k)].

Any owner of land or other property affected by the report of plans for improvements may file exceptions and a claim for damages at, or before, the hearing, and at the time and place named in the notice the Tribunal proceeds to hear evidence and determine objections and claims for damages, and, after determining all matters presented, enters final decree "to conform to the justice of each case under the facts presented." [Sec. (1)].

A certified copy of the final decree is filed with the County Clerk as notice to all persons and is subject to appeal and judicial review in the manner of a trial *de novo* by the District Court without the intervention of a jury, the court to be "governed by the law and rules of procedure relating to trial and awards in damage suits" in considering "whether just compensation has been allowed or whether any damages are lawfully recoverable," such review by the District Court being "as summary in character as is consistent with the doing of full and complete justice." [Sec. (1)].

After hearing "all evidence and argument offered, the court in term time shall enter its final decree, either approving the decree of the Tribunal of Original Jurisdiction, modifying same, or in any manner changing the same, so that the decree will in the court's judgment conform to the justice of each specific case." [Sec. (1)].

Appeals may be taken as in other civil cases, and each appeal constitutes a separate cause upon the docket of the Court of Civil Appeals. [Sec. (1)].

The Court of Civil Appeals held the statute unconstitutional as violative of due process in the fact that the provision for Tribunal hearing is after, and not before, the filing of the proposed report of the Tribunal. The sufficiency of notice under the statute is not here questioned.

It is at once apparent that the proposed report and hearing before the Tribunal and the trial in the District Court are not unrelated but are parts of a comprehensive statutory plan beginning with the proceedings before the Tribunal and concluding in the courts. Persons affected have only to avail themselves of the opportunity to be heard before the Tribunal and, in turn, before the District Court. The term "proposed report" itself connotes an act which is tentative; it imports a preliminary finding for consideration and review which in its nature lacks finailty unless found acceptable by those affected.

This Court in Beyman v. Black, 1877, 47 Texas 558, 571, speaking through Justice Gould, said:

" 'Due process of law' in each particular case means such an execution of powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe *for the class of cases to which the one in question belongs.*" (Emphasis added.)

The Supreme Court of the United States in North Laramie Land Co. v. Hoffman, 1924, 268 U.S. 276, 45 Sup. Ct. 491, 69 L. Ed. 953, sustained against federal due process attack the procedure of a Wyoming statute for taking land for road construction. The issue pertinent here was drawn and decided by the court in this manner:

"But the plaintiff in error objects to the procedure established by the statute because, under it, plaintiff was afforded no opportunity for a hearing, either before the Appraisers or the Board of County Commissioners, and in consequence, assuming the sufficiency of the notice, there was a denial of due process of law in determining the amount of damage or compensation to be awarded for the taking of plaintiff's property. When there is a constitutional right to a hearing, as was held in Bragg v. Weaver, supra, one constitutional method of fixing damages 'among sev-

eral admissible modes is that of causing the amount to be assessed by viewers subject to an appeal to a court carrying with it a right to have the matter determined upon a full trial.' This is the rule adopted in numerous other cases."

Bragg v. Weaver, 1919, 251 U.S. 57, 40 Sup. Ct. 62, 64 L. Ed. 135, referred to above, was a suit to enjoin the taking of earth to be used in repairing a road. The owner urged the objection that the statute did not afford him an opportunity to be heard. The court set forth the statutory procedure and its decision on due process as follows:

"Apart from what is implied by the decision under review, no construction of these statutory provisions by the state court of last resort has been brought to our attention; so for the purposes of this case we must construe them. The task is not difficult. The words employed are direct and free from ambiguity and the several provisions are in entire harmony. They show that, in the absence of an agreement, the compensation is to be assessed primarily by viewers, that their award is to be examined by the supervisors and approved or changed as to the latter may appear reasonable, and that from the decision of the supervisors an appeal lies as of right to the Circuit Court where the matter may be heard *de novo*. Thus, by exercising the right to appeal the owner may obtain a full hearing in a court of justice,—one concededly possessing and exercising a general jurisdiction. An opportunity to have such a hearing, before the compensation is finally determined, and when the right thereto can be effectively asserted and protected, satisfies the demand of due process."

Preliminary, the court stated the rule to be:

"But it is essential to due process that the mode of determining the compensation be such as to afford the owner an opportunity to be heard. Among several admissible modes is that of causing the amount to be assessed by viewers, subject to an appeal to a court carrying with it a right to have the matter determined upon a full trial. (Citations) And where this mode is adopted due process does not require that a hearing before the viewers be afforded, but is satisfied by the full hearing that may be obtained by exercising the right to appeal."

The Supreme Court again in Davidson v. City of New Orleans, 96 U.S. 97, 105, 24 L. Ed. 616, speaks of due process of law relating to the taking of property, as follows:

"But however this may be, or under whatever other clause of the Federal Constitution we may review the case, it is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has, by the laws of the State, a fair trial in a court of justice, according to the modes of proceeding applicable to such a case."

It was observed by the same Court in Hagar v. Reclamation District, 111 U.S. 701, 708, 4 Sup. Ct. 663, 28 L. Ed. 569, that "it is sufficient to observe here, that by 'due process' is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected."

The Supreme Court in Pacific Livestock Company v. Oregon Water Board, [Lewis] 241 U.S. 440, 36 Sup. Ct. 637, 60 L. Ed. 1084, considered the constitutionality, against due process attack, of a statute of Oregon providing procedures for a distribution of waters among those entitled to their use, to be administered by the State Water Board. Proceedings before the Board were *ex parte*, and the Board was required to enter an order embodying findings and provisionally determining the relative rights of the several claimants. The evidence considered by the Board and a copy of the order were transmitted to the Circuit Court where exceptions could be presented, the court pointing out that "In short, upon exceptions the court may re-examine the whole matter and enter such decree as the law and the evidence may require, whether it be an affirmance or a modification of the board's order." The court pointed out that the findings and order of the court were *prima facie* final and binding until changed in some proper proceeding.

The court held in answer to the contention that the statute was repugnant to the due process of law clause of the 14th Amendment:

"A serious fault in this contention is that it does not recognize the true relation of the proceeding before the board to that before the court. They are not independent or unrelated, but parts of a single statutory proceeding, the earlier stages of which are before the board and the later stages before the court. In notifying claimants, taking statements of claim, receiving evidence and making an advisory report the board merely paves the way for an adjudication by the court of all the rights involved. As the Supreme Court of the State has said, the board's duties are much like those of a referee. All the evidence laid before it goes before the court, where it is to be accorded its proper weight and value.

That the State, consistently with due process of law, may thus commit the preliminary proceedings to the board and the final hearing and adjudication to the court is not debatable."

It was held by this court in Buffalo Bayou, B. & C. RR. v. Ferris, 26 Texas 588, 599 (1863) :

"It cannot therefore be maintained, as is insisted, that the manner of ascertaining and assessing the amount of compensation that should be made to appellee for the property taken from him, as prescribed by the act of the legislature granting appellants their charter, is unconstitutional, because it does not require or authorize such compensation to be determined by the finding of a jury. *The Legislature cannot take private property without adequate compensation being made, but the constitution does not prescribe a rule for determining what constitutes adequate compensation. It may be done in any manner that the legislature in its discretion may prescribe, if the means prescribed are effectual for fairly ascertaining the adequate compensation which the owner of the property should receive.* The constitutional provision, that 'the right of trial by jury shall remain inviolate,' does not apply to the case of taking private property for public use, * * * ." (Emphasis added.)

See also Bauman v. Ross, 167 U.S. 548, 574, 17 Sup. Ct. 966, 42 L. Ed. 270, in which the court points out that "* * * it is the duty of the State, in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it."

The principles announced in Buffalo Bayou, etc. v. Ferris, supra, were reaffirmed by this court in Brazos River Conservation District v. Costello, 135 Texas 307, 143 S.W. 2d 577, 578, 580, 130 A.L.R. 1220:

"The history of the many laws enacted by the Legislature of this State relating to the exercise of the right of eminent domain clearly shows that it is the policy of the Legislature to liberalize the exercise of that power, rather than to restrict it."

*   *   *   *

"The Constitution of this State does not prescribe any specific rule governing condemnation proceedings. That power is left to the Legislature."

The statute under review discloses a fixed legislative purpose to secure timely notice to all affected persons of every material step in the proceeding, together with full opportunity to be heard. While the proposed report of the Tribunal is without hearing in the first instance, full opportunity is given before the Tribunal for reviewing its findings and for the introduction of evidence and examination of witnesses; and, thereafter, for a trial in the nature of a trial *de novo* before the District Court. Our system of jurisprudence knows no better opportunity to be heard than by trial in the District Court, with the right of appeal therefrom as in all civil cases.

We are of the opinion that the legislative provisions in the statute under review afford respondents effectual and reasonable notice and opportunity to be heard; and to have ultimately determined upon a trial in the District Court the fair and just damages which respondents should be paid for the taking of their property by petitioner. We hold that due process of law is thus afforded respondents.

We have considered the other grounds of unconstitutionality urged by respondents in the trial court and before the Court of Civil Appeals, together with the alleged errors in certain proceedings presented by petitioner. As we are in agreement with the holdings of the Court of Civil Appeals on such points, we pretermit further discussion thereof.

For the error pointed out, namely, the holding that Section (j) of Article 7880-126, Vernon's Annotated Civil Statutes, is violative of due process, the judgments of the trial court and the Court of Civil Appeals are reversed, and this cause is remanded to the District Court for further proceedings consistent with this opinion.

Opinion delivered February 15, 1961.