JOHN W. COBLE V. CITY OF MANSFIELD, TEXAS

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-129-CV

JOHN WAYNE COBLE APPELLANT

V.

CITY OF MANSFIELD, TEXAS APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

I.  INTRODUCTION

This is a condemnation case.  The issue is whether costs of a screening wall and landscaping constituted compensable damages to the remainder of property of Appellant, John Wayne Coble, resulting from the taking by Appellee, the City of Mansfield, of an easement covering 2.42 acres of Coble’s tract for a road construction project.  Because we hold that Coble is precluded, as a matter of law, from recovering compensation for the costs in question because they are speculative and conjectural, we affirm the judgment of the trial court awarding Coble no damages to the remainder of  the tract.  

II.  FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 1984, the City, a home-rule municipality, adopted a Thoroughfare Plan, showing long term plans for major roads and streets throughout the City, including East Broad Street and Matlock Road as proposed six-lane divided arterials.  Both arterial streets were to be located, in part, on a 25.76 acre tract of land owned by Coble within the City, with the intersection of the two streets to be located in part on the southeast corner of Coble’s tract.  In 1997, the City began the process of construction, which required the City to acquire rights-of-way out of Coble’s tract. The City adopted resolution No. 1129 on October 27, 1997, authorizing acquisition of a permanent right-of-way easement approximately sixty feet deep on the southeast and southwest edges of Coble’s tract. 

On November 25, 1997, after the parties were unable to agree on a value for purchase of the land to be encompassed by the easement, the City filed its petition in County Court of Law No. 1 of Tarrant County, exercising its power of eminent domain for condemnation to acquire the easement for a permanent right-of-way encompassing 2.42 acres of Coble’s 25.76 acre tract.
(footnote: 1)  The court appointed a panel of three special commissioners to assess Coble’s damages. 
See
 
Tex. Prop. Code Ann.
 § 21.014 (Vernon 1984).
(footnote: 2)  

Following a hearing, the commissioners awarded Coble $46,420 for the value of the 2.42 acres for a permanent right-of-way, and awarded no damages for diminution in value to the remainder of Coble’s tract.  The City deposited the funds for the 2.42 acres taken into the registry of the court and took possession of the condemned property.  Coble timely filed a motion to withdraw the funds and thereafter withdrew the deposited funds.  Coble also filed formal Objections to the commissioners’ award, thus invoking the jurisdiction of the trial court to determine the issue of damages to the remainder.  
See id
. § 21.018 (providing appeal process from commissioners’ findings).
(footnote: 3)
 Coble and the City filed cross-motions for partial summary judgment and responses.  The sole issue presented by the summary judgment proceedings was whether the costs of constructing a perimeter screening wall and related landscaping estimated at $186,980 by Coble’s appraiser, which Coble alleged he would suffer because of Mansfield City Ordinance No. 1129, constituted compensable damages to the remainder of his property resulting from the condemnation.  

The City had adopted Ordinance No. 1129 approximately one year before adoption of the resolution to proceed with construction of the proposed roads and condemnation of the right of way.  Ordinance No. 1129, adopted October 14, 1996, requires that:

When residential subdivisions are platted so that the side or rear yard of the subdivision lots are adjacent to a highway frontage road or an existing or proposed four-lane-undivided or larger thoroughfare as shown in the City’s most recent Thoroughfare Plan, a screening wall shall be provided along said frontage road or thoroughfare . . . . 

The ordinance requires that the screening wall be at least six feet in height; that it be constructed of masonry materials; and that, in accordance with specific landscaping requirements, a “continuous reinforced concrete mow edge” be installed along the street side of the screening wall. 

The appraisers for the City and Coble agreed that the highest and best use for the remainder of Coble’s tract, both before and after the taking, was for residential subdivision development.  The City’s motion for partial summary judgment contended that the “highest and best use” determination did not determine the true future use of the property and Coble had not yet chosen to develop the property as a residential subdivision; therefore, the damages sought were not caused by the condemnation.  Rather, it argued that only a subsequent decision to develop the property as a residential subdivision–not the taking itself–would potentially “trigger” Ordinance No. 1129 that pre-dated the condemnation by a year.

The City objected to Coble’s expert’s opinion that compliance with the ordinance was the “result of the taking and the resulting highway frontages” on the basis that it was irrelevant and stated a legal conclusion.  The City further contended that the costs of a screening wall and landscaping were non-compensable “community damages”; and, alternatively, that payment to Coble for the costs of a screening wall and landscaping would constitute an unconstitutional “gift.” 

Conversely, Coble’s motion for partial summary judgment argued that his appraiser’s opinions established that the costs for constructing a screening wall and landscaping resulted from the condemnation of the strip for a right-of-way, and it was as the result of the condemnation that he would be required to comply with Ordinance No. 1129 for a screening wall and landscaping to develop the tract for a residential subdivision.  Coble further argued that evidence of the cost of compliance with Ordinance No. 1129 was admissible under the traditional statement of the rule for the measure of damages to the remainder tract set forth in 
State v. Carpenter
, 126 Tex. 604, 89 S.W.2d 194, 200 (1936) (stating generally that it is proper to admit evidence of all circumstances that would tend to increase or diminish the present market value).

Additionally, Coble pleaded in his Amended Objections and urged in his motion for partial summary judgment that the effect of Ordinance No. 1129, separately, violated article I, section 17 of the Texas Constitution by constituting a “regulatory taking,” entitling him to inverse condemnation damages consisting of the costs required to comply with the Ordinance, in addition to the condemnation damages for the value of the 2.42 acres taken. 

After a hearing, the trial court denied Coble’s motion and granted the City’s motion.  Thereafter, the parties presented to a jury the only remaining issue in the case, which was the market value of the 2.42 acres taken as of February 20, 1998.  At trial, as the consequence of the granting of the City’s motion for partial summary judgment and denying Coble’s motion, the trial court excluded evidence of Coble’s expert appraiser that the market value of the remainder of Coble’s tract, after condemnation of the 2.42 acre tract, would be diminished by the amount of $186,980, which constituted the projected costs to construct the screening wall and landscaping that would be required by the City’s Ordinance No. 1129 as the result of the condemnation, to develop the property as a residential subdivision.  At trial, the City’s expert appraiser testified that the market value of the 2.42 acres taken was $42,200.  The expert for Coble testified that the value of the 2.42 acres was $60,500. Following receipt of the jury’s verdict, the trial court granted Coble’s motion to disregard the jury finding and its motion for a new trial because the jury impermissibly found a value on a per acre basis. 

Thereafter, the parties entered into a settlement agreement for an agreed final judgment, awarding the condemned property to the City and $50,820 to Coble for the 2.42 acres taken.  As a part of the settlement, Coble reserved his right to appeal the trial court’s partial summary judgment precluding recovery for Coble’s alleged element of damages to the remainder.  Accordingly, Coble timely filed his notice of appeal to this court. 

III.  STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
S.W. Elec. Power Co., 
73 S.W.3d at 215;
 Rhone-Poulenc, Inc. v. Steel,
 997 S.W.2d 217, 223 (Tex. 1999); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.  
Great Am.
, 391 S.W.2d at 47.  The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
Dow Chem. Corp. v. Bright
, 89 S.W.3d 602, 605 (Tex. 2002).  The reviewing court should render the judgment that the trial court should have rendered.  
Id
.

Questions of law are appropriate matters for summary judgment.  
Rhone-Poulenc, Inc. v. Steel,
 997 S.W.2d 217, 222 (Tex. 1999).  Because the proper measure of damages is a question of law, it is an appropriate matter for summary judgment.  
See
 
Interstate Northborough P’Ship v. State
, 66 S.W.3d 213, 220 (Tex. 2001); 
Allied Vista, Inc. v. Holt
, 987 S.W.2d 138, 141 (Tex. App.—Houston [14
th
 Dist.] 1999, pet. denied).  We review the trial court’s legal conclusions on this issue de novo.  
Interstate Northborough P’Ship
, 66 S.W.3d at 220
.

IV.  EMINENT DOMAIN AND COMPENSABLE DAMAGES

Both the United States and Texas Constitutions require governments to compensate landowners for taking their property for a public use.  
U. S. Const.
 amend. V (requiring “just compensation”); 
Tex. Const. 
art. I, § 17 (“No person’s property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person.”).  When a governmental entity condemns real property, the normal measure of damages is the property’s market value. 
Tex. Prop. Code Ann.
 § 21.042(b) (Vernon Supp. 2004).

When only a part of a landowner’s property is taken, adequate compensation is required both for the part taken and for any severance damages to the remainder.  
State v. Schmidt
, 867 S.W.2d 769, 772 (Tex. 1993) (noting requirement of compensation for damages to the remainder required since very early in this State’s history) (citing
 Buffalo B., B & Colo. R.R. v. Ferris
, 26 Tex. 588, 603 (1863)), 
cert. denied
, 512 U.S. 1236 (1994).  Consequently, the Texas Property Code, which now governs assessment of damages in condemnation proceedings, requires:

If a portion of a tract or parcel of real property is condemned, the special commissioners shall determine the damage to the property owner after estimating the extent of the injury and benefit to the property owner, 
including the effect of the condemnation on the value of the property owner’s remaining property
.

Id
. § 21.042(c) (emphasis added).

The proper measure of compensation damages when only a portion of a tract is taken for public use is the market value of the part taken and “the difference between the market value of the remainder property immediately before the condemnation and the market value of the remainder property immediately after the condemnation, taking into consideration the nature of any improvements and the use of the land taken.”  
Interstate Northborough P’Ship
, 66 S.W.3d at 218 (citing 
Carpenter
, 126 Tex. 604, 89 S.W.2d at 197); 
see
 
Exxon Pipeline Co. v. Zwahr
, 88 S.W.3d 623, 627 (Tex. 2002) (stating compensation in a partial taking “is measured by the market value of the part taken plus any diminution in value to the remainder of the land”) (citing 
Westgate, Ltd. v. State
, 843 S.W.2d 448, 456 (Tex. 1992)). 

It is well settled that courts should admit as market-value evidence such matters as suitability, adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the remainder’s market value.  
Carpenter
, 126 Tex. 604, 89 S.W.2d at 200.  A condemnee “may recover damages which are reasonably foreseeable, and he [or she] may show the reasonably probable uses of the tract taken that are calculated to depress the value of the remainder tract and thus enhance the recovery of damages.”  
City of Pearland v. Alexander
, 483 S.W.2d 244, 247 (Tex. 1972).

Damages due to “required modifications to the remainder, as a result of the condemnation, or damages due to a loss of improvements on the remainder because of the condemnation may, on a proper showing, be compensable.”  
State v. Centennial Mortgage Corp
., 867 S.W.2d 783, 784 (Tex. 1993) (holding evidence of costs of modifications to remainder required as result of condemnation of portion for highway, including rebuilding retention ponds and other improvements formerly located on condemned strip, admissible to show decrease in market value of remainder).   Importantly, however, evidence should be excluded “relating to remote, speculative, and conjectural uses, as well as injuries, which are not reflected in the present market value of the property.”  
Schmidt, 
867 S.W.2d at 773 (quoting 
Carpenter
, 126 Tex. 604, 89 S.W.2d at 200).

V.  ANALYSIS

The City’s appraisal offered as summary judgment evidence did not include any damages concerning the estimated cost of constructing a perimeter screening wall because the City’s legal counsel instructed the appraiser to exclude such costs.  Coble’s appraiser, Jaime Wickliffe, however, in her affidavit stating her opinions in support of Coble’s motion for partial summary judgment, included damages for the estimated cost of construction of a perimeter screening wall in the amount of $185,000.  Her report stated that costs of the wall were included because “[a]s a result of the taking and the resulting roadway frontages, the property is subject to a screening wall requirement imposed by the City of Mansfield, in order to develop the property as a single family residential subdivision.” 

It was undisputed that Coble’s tract carried a single family residential zoning classification in 1996, and also that the highest and best use of the remainder was for residential subdivision development.  Coble’s appraiser’s opinions, and his arguments on appeal as to the admissibility of her opinions, are based upon the assumption that the property will, in fact, be developed as a residential subdivision.  However, it was undisputed that, at the time of the condemnation, Coble’s tract was vacant and unimproved land that had not been platted for residential subdivision development, and there was no evidence that any such development was proposed.

Ordinance No. 1129 is qualified by certain conditions and exceptions.  The plain language of the ordinance provides that its requirements are only invoked “
when a residential subdivision is platted.
”  Further, the ordinance specifies that the screening wall shall be provided only when a subdivision is platted “so that the side or rear yard of the subdivision lots are adjacent to a highway frontage road or an existing or proposed four-lane undivided or larger thoroughfare as shown in the City’s most recent Thoroughfare Plan.”  Ordinance No. 1129 further states that the screening wall requirement “shall not apply when a residential subdivision is platted so that the side or rear setback adjacent to said highway frontage road or thoroughfare is seventy-five (75) feet or greater.”  Finally, Ordinance No. 1129 provides that, “in exceptional cases, the Planning and Zoning Commission may grant a variance or modify the screening wall requirement described herein.” 

Not only had Coble’s remainder tract not been platted at the time of the condemnation but also, contrary to the assumption upon which Coble’s theory for remainder damages was asserted, the City presented the affidavit of Felix Wong, Planning Director for the City of Mansfield, in its response to Coble’s motion for partial summary judgment, pointing out,

The provisions of Ordinance 1129 to which Mr. Coble attributes damages to the remainder of his property would be effective only if his property retains a residential zoning classification.  Mr. Coble is free to seek other zoning classifications for this property which, if approved would remove the present zoning classification. 

Wong stated in his affidavit that, following the 1998 hearing by the special commissioners, Coble had filed an application to change the zoning classification on portions of his property from residential to C-2 commercial.  Wong averred that the Planning and Zoning Commission had recommended Coble’s application for approval, and the Mansfield City Council  approved it on first reading.  Wong’s affidavit stated that, “[i]f approved by council on third reading, Mr. Coble will be released from his obligation to build a screening wall.”  Wong’s affidavit was not controverted by Coble.

We agree with the City that Coble is seeking to recover the estimated cost of complying with an ordinance, the applicability of which had not yet been determined at the time of taking, because Coble offered no evidence that any of the prerequisites for application of the ordinance had been met or would be met in the foreseeable future, so as to require him or a purchaser to incur the costs of compliance.  The City’s evidence shows that, to the contrary, it is probable that the property will be developed as commercial, rather than residential.  We agree with the City that, under these circumstances, any damages claimed by Coble to comply with Ordinance No. 1129 to develop the property as a residential subdivision were not reasonably foreseeable, but were remote, speculative, and conjectural.  
See City of Harlingen v. Estate of Sharboneau
, 48 S.W.3d 177, 187 (Tex. 2001) (Baker, J., concurring);
 Alexander
, 483 S.W.2d at 247; 
Carpenter
, 126 Tex. 604, 89 S.W.2d at 200.

In 
City of Austin v. Cannizzo
, the supreme court was faced with the issue of whether to admit evidence of a use for which the remainder of an unimproved tract, after a partial taking, was suitable and adaptable at the time of the condemnation.  153 Tex. 324, 267 S.W.2d 808, 812-13 (1954).  The court noted that, in the willing seller-willing buyer test of market value, it is “frequently said that all factors should be considered which would reasonably be given weight in negotiations between a seller and a buyer.”  
Id
. at 814.  In so stating, the court further cautioned, however:

This would exclude consideration of purely speculative uses to which the property might be adaptable but wholly unavailable but would permit consideration of all uses to which the property was reasonably adaptable and for which it was, or in reasonable probability would become, available within a reasonable time. . . .  ‘To warrant admission of testimony as to the value of land for purposes other than that to which it is being put at the time of the taking, it must first be shown:  1.  That the property is adaptable to the other use.  2.  That the other use is reasonably probable within the immediate future, or a reasonable time.  3.  That the market value of the land has been enhanced thereby.’

Id
. (citation omitted).

The evidence is undisputed in this case as to the first element, that the property is adaptable to development as a residential subdivision, but there is no evidence of the second element listed in 
Cannizzo
.  
See id
.  Not only is there no evidence the property will be so developed within the immediate future or a reasonable time, but the only evidence is to the contrary, that Coble does not intend to do so and has applied for a zoning change for commercial use, as to which Ordinance No. 1129 would not apply.

The court in 
Cannizzo
 also held that opinion evidence as to the present market value of the unimproved remainder property might be admissible, taking into consideration its adaptability to subdivision residential or commercial use, but that opinions as to the value of nonexistent lots in a hypothetical subdivision were “too speculative to be admitted as direct evidence of market value.”  
Id
. at 816.  More recently, in 
City of Harlingen
, despite the parties’ stipulation that the highest and best use of vacant land was residential subdivision development, the court held that an expert’s opinion testimony of market value based upon the subdivision development method was not relevant because it involved a number of analytical steps, “most involving assumptions and estimates, any one of which could seriously affect the appraisal’s accuracy.”  48 S.W.3d at 184. Characterizing and rejecting the use of the subdivision development method for determining market value of raw land in 
City of Harlingen
 as “conjectural and speculative,” the court stated that such valuation testimony “bypassed all of the problems that could appear during an actual development, substituting instead the best possible outcome.”  
Id
. at 184-85.

As in 
City of Harlingon
, the opinion testimony of Coble’s appraiser and Coble’s own theory for recovery of the costs of compliance with Ordinance No. 1129 are based upon the speculative assumption that residential subdivision development of the remainder tract 
will
 occur, and that the property 
will
 be platted so that the layout of lots will trigger the necessity to incur the costs to comply, bypassing all of the problems as well as the steps that might occur with possible residential development of the tract.  
See id
.  Coble offered no evidence that:  (1) the remainder of his tract had been platted or was even in the planning stages of being platted as a residential subdivision; (2) any such plat or proposed plat would place the side or rear yard of the subdivision lots adjacent to the streets to be constructed by the City for which the easement was being taken; or (3) the property was platted or proposed to be platted so that the side or rear setback adjacent to the highway frontage road or thoroughfare would be less than seventy-five feet.  Additionally, Coble offered no evidence that he would be unable to get a variance or a modification of the screening wall requirement from the Mansfield Planning and Zoning Commission. 

We hold that Coble’s theory of damages for the remainder and the opinion testimony of his appraiser were based on speculation and conjecture and that the trial court properly granted the City’s motion for partial summary judgment, ruling that the costs of compliance with Ordinance No. 1129 were not recoverable as damages to the remainder. The costs of complying with Ordinance No. 1129 were not reasonably foreseeable at the time the City condemned his 2.42 acre tract, but instead were remote, speculative, and conjectural.
(footnote: 4)  
City of Harlingen
, 48 S.W.3d at 187;
 
Carpenter
, 126 Tex. 604, 89 S.W.2d at 200; 
see Tex. Elec. Serv. Co. v. Campbell
, 161 Tex. 77, 336 S.W.2d 742, 745 (Tex. 1960) (holding certain evidence in eminent domain proceeding “based on possibilities rather than reasonable probabilities, on mistaken ideas as to the privileges granted to petitioner and on speculation, as incompetent”);
 see also S.W. Bell Tel. Co. v. Radler Pavilion Ltd. P’ship
, 77 S.W.3d 482, 486 (Tex. App.—Houston [1
st
 Dist.] 2002, pet. denied) (holding expert testimony as to redevelopment of remainder to highest and best use as multi-use commercial center, after taking of portion for utility easement, was based on speculative assumption that such redevelopment would occur and was inadmissible absent evidence that such redevelopment was reasonably probable within the immediate future or a reasonable time).

The City further argues that Coble is effectively seeking to recover the potential future costs of complying with the ordinance as damages for inverse condemnation by a regulatory taking, when the applicability of Ordinance No. 1129 had not been determined at the time of the eminent domain proceeding.  Coble attempted to raise this issue in the trial court and argues that application of Ordinance No. 1129 creates a taking by inverse condemnation, as the result of the City’s condemnation of the strip easement and development of the roads adjacent to his property.  
See Mayhew v. Town of Sunnyvale
, 964 S.W.2d 922, 933 (Tex. 1998) (recognizing that takings can either be physical or regulatory), 
cert. denied
, 526 U.S. 1144 (1999);
 Town of Flower Mound v. Stafford Estates Ltd. P’ship
, 71 S.W.3d 18, 29 (Tex. App.—Fort Worth 2002, pet. granted) (“A regulatory taking may occur when governmental land-use regulation deprives a land owner of all economically viable use of his land or when the land-use regulation does not substantially advance a legitimate state interest.”); 
see also
 45 
Jeff Civins et al., Texas Practice:  Environmental Law
 § 22.2 (1997) (discussing condemnation versus inverse condemnation proceedings).

Ordinance No. 1129 is triggered by the development of the remainder property in a particular manner—not by the condemnation or construction of the road itself.  The development has not occurred, nor has it been proposed.  As argued by the City, such a regulatory takings claim was not “ripe” at the time of the eminent domain proceeding because no regulatory taking occurs until the governmental entity charged with implementing the regulation reaches a final decision regarding application of the regulation to the property.  
Mayhew
, 964 S.W.2d at 929 (citing 
Suitum v. Tahoe Reg’l Planning Agency
, 520 U.S. 725, 733-34 & n.7, 117 S. Ct. 1659, 1664-65 & n.7 (1997)).  A “final decision” usually requires a rejected development plan.  
Id
.; 
see Hodel v. Va. Surface Mining & Reclamation Ass’n
, 452 U.S. 264, 293-97, 101 S. Ct. 2352, 2369-71 (1981) (refusing to consider takings claim based on general regulatory provision that had not been applied to specific properties and from which no administrative relief had been sought).

Absent a showing of “futility,” which Coble has not asserted, the ripeness doctrine also requires the plaintiff to apply for a variance to establish to what extent the regulatory authority will permit development.
  Town of Sunnyvale v. Mayhew,
 905 S.W.2d 234, 245 (Tex. App.—Dallas 1994) (citing 
Williamson County Reg. Planning Comm’n v. Hamilton Bank
, 473 U.S. 172, 186, 105 S. Ct. 3108, 3116 (1985)), 
rev’d on other grounds
, 964 S.W.2d 922 (Tex. 1998).   Ripeness is an element of subject matter jurisdiction.  
Mayhew,
 964 S.W.2d at 928.  As such, ripeness is a legal issue subject to de novo review that we could raise sua sponte. 
 Id.
  Here, the City has raised the issue of ripeness, and we agree that any claim that Coble may have for a regulatory taking is not ripe for review because there is no evidence that the City has made a final decision as to the applicability of the ordinance to Coble’s remainder tract, and there is no evidence that he has requested a variance.  Therefore, neither this court nor the trial court has subject matter jurisdiction over this claim.  To the extent that Coble or a subsequent purchaser may have such a claim, it may be pursued when and if the property is platted for residential subdivision development in the future.

VI.  CONCLUSION

We hold that the trial court did not err in granting the City’s motion for partial summary judgment and in denying Coble’s motion for partial summary judgment, thereby precluding recovery of damages to the remainder of Coble’s tract concerning the construction of a screening wall and related landscaping in compliance with Ordinance No. 1129.  We further hold that we, along with the trial court, lack subject matter jurisdiction to consider Coble’s regulatory taking claim in this eminent domain proceeding and that the trial court, therefore, did not err in refusing to grant relief on that claim.  We overrule Appellant’s sole issue and affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED:  February 12, 2004

FOOTNOTES
1:
Eminent domain is the right or power of a sovereign state to appropriate private property for the promotion of the general welfare.  
Tex. Highway Dep’t v. Weber
, 147 Tex. 628, 219 S.W.2d 70, 72 (1949).  

2:
Section 21.014 concerns the appointment of special commissioners and states, in pertinent part:  “The judge of a court in which a condemnation petition is filed or to which an eminent domain case is assigned shall appoint three disinterested freeholders who reside in the county as special commissioners to assess the damages of the owner of the property being condemned.”  
Id
.

3:
See State v. Martini
, 902 S.W.2d 138, 143 (Tex. App.—Houston [1
st
 Dist.] 1995, no writ) (noting effect of filing objections to award is to vacate special commissioners’ award and to convert administrative proceeding into ordinary pending cause); 
see also State v. Jackson
, 388 S.W.2d 924, 925 (Tex. 1965) (noting objections vest court with jurisdiction).

4:
In light of this disposition, we need not address the City’s alternative arguments that the costs of a screening wall and landscaping were non-compensable as community damages and that such would constitute an unconstitutional “gift.”  
See
 
Tex. R. App. P.
 47.1.