

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00267-CV

STATE OF TEXAS AND TARRANT
COUNTY, TEXAS

APPELLANTS

V.

LEDREC, INC.

APPELLEE

----------

## FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

## OPINION

----------

This is an agreed interlocutory appeal from the trial court's denial of the State of Texas's and Tarrant County, Texas's motion for partial summary judgment challenging Ledrec, Inc.'s expert's formulation of damages in this condemnation case. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 1051, §§ 1–2, 2005 Tex. Gen. Laws 3512, 3512–13 (former Tex. Civ. Prac. & Rem. Code Ann.

§ 51.014(d)).[1]   In one issue, appellants contend that the trial court erred by determining that the expert's testimony on the measure of damages is admissible even though its basis is "remote, speculative, and conjectural."  We affirm.

**Background**

Ledrec owns property adjacent to F.M. 1187 in Tarrant County, which is located in the extraterritorial jurisdiction (ETJ) of the City of Mansfield.  To widen F.M. 1187, appellants needed to condemn a ten-foot strip of land from the part of Ledrec's property that abuts the highway.  After appellants filed a petition seeking condemnation, the special commissioners appointed by the trial court awarded Ledrec $65,000:  $11,180 for the ten-foot strip of property taken and $53,820 for damage to the remainder of Ledrec's property caused by the taking.  Ledrec objected to the special commissioners award, so the State's petition for condemnation is still pending in the county court at law.  *See* Tex. Prop. Code Ann. § 21.018(b) (West 2004).

The parties have agreed on the damage award applicable to the ten-foot strip of land to be taken; the sole dispute left in the trial court is an appropriate damage award for the remainder of the property because of the taking. Appellants' expert, Nicole Schechter, testified in her deposition that the remainder property was damaged in the amount of $58,740 based on the lower

---

[1]This former version of section 51.014(d) is still in effect as to cases filed in the trial court before September 1, 2011.  Act of May 25, 2011, 82nd Leg., R.S., ch. 203, § 6.01, 2011 Tex. Gen. Laws 758, 761.

overall rental rate that the front two buildings on the property will be able to garner because they will be closer to the highway after the taking and will lose parking. Ledrec's expert, James Maibach, opined that the damage to the remainder property is $248,000—the loss of the entire income-producing value of the front two buildings. His opinion is based on the premise that the front two buildings will be "functionally obsolete" after the taking and that no willing buyer would attribute any value whatsoever to those two buildings as of the date of taking.

According to Maibach, because the front two buildings would be only twenty feet from the road after the taking, the property would not be compliant with most of the zoning classifications Mansfield would likely impose on the property, all of which require minimum setback lines of thirty feet from the road. Although this thirty-foot setback would not apply to the property while it was only in the ETJ (unless Ledrec were to replat the property), once Mansfield annexed the property, the front two buildings would be nonconforming under Mansfield's zoning ordinance.[2] Appellants presented evidence that Mansfield has no current plans to annex the property, but Maibach testified that because the property is within Mansfield's ETJ, annexation is inevitable.

---

[2]Maibach testified that because of the resulting future nonconforming use and loss of parking to the front two buildings, the best use of the property would be to tear down the front two buildings and use that space for parking for the remainder property.

3

In their motion for summary judgment, appellants allege that Maibach's testimony is inadmissible as a matter of law because it is remote, speculative, and based on conjecture in that it is based on the mere possibility that the buildings will become functionally obsolete and no longer generate income as of the day of the taking even though Mansfield has not yet annexed the property and there is no evidence as to when Mansfield will annex it. Ledrec filed a cross-motion for summary judgment, contending that Maibach's testimony is admissible and that the effect of a future annexation of the property can be taken into account in determining the proper measure of damages. The trial court denied appellants' motion and granted Ledrec's.

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting

4

evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

<strong>Propriety of Interlocutory Appeal</strong>

Former section 51.014(d) of the civil practice and remedies code provided that

> (d) A district court, county court at law, or county court may issue a written order for interlocutory appeal in a civil action not otherwise appealable under this section if:

> (1) the parties agree that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion;

> (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation; and

> (3) the parties agree to the order.

Act of May 27, 2005, 79th Leg., R.S., ch. 1051, §§ 1–2, 2005 Tex. Gen. Laws 3512, 3512–13. Here, the trial court's order states that the controlling issue of law is as follows:

> Within the confines of well-settled Texas law that the measure of damages to remainder property is the difference in market value immediately before the taking and immediately after the taking, and even though the Defendant's property in question had not been annexed by the City of Mansfield on the date of taking — *Is the testimony (and written report) of Defendant's valuation expert regarding the "after-taking" market value of the remainder property based upon the following factors admissible*?

> (1) The remainder property is in the ETJ of the City of Mansfield;

> (2) The remainder property will be annexed by the City of Mansfield;

> (3) Prior to the condemnation, the subject property complied with the City of Mansfield's platting and zoning requirements including specifically its parking requirements and its building set back requirements;

> (4) Upon annexation, the remainder property will be "non-conforming" (i.e., it will not comply with certain platting, zoning, and building requirements of the City of Mansfield)[;] and

> (5) After annexation, numerous scenarios could arise which would give the City of Mansfield the right to require the landowner/condemnee (or its successor) to conform the remainder property to the City of Mansfield's zoning, platting, and building requirements – all of which would have a significant detrimental impact on the landowner/condemnee (or its successor) (i.e., the cost, expense, and/or loss caused by

6

conformance, including demolition, in whole or in part, of Building Nos. 1 and 2).

[Emphasis added.]

Although the issue is framed in terms of admissibility of the expert's testimony, which is normally reviewed under an abuse of discretion standard, the competing summary judgment motions address the propriety of Maibach's testimony regarding the proper measure of damages in this case. *See State v. Petropoulos*, 346 S.W.3d 525, 529 (Tex. 2011). The proper measure of damages is a question of law. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *Coble v. City of Mansfield*, 134 S.W.3d 449, 454 (Tex. App.—Fort Worth 2004, no pet.). Thus, the issue is an appropriate matter for summary judgment and may be addressed in an agreed interlocutory appeal if it is controlling and there is a substantial ground for a difference of opinion.[3] *Coble*, 134 S.W.3d at 454; *see* Act of May 27, 2005, 79th Leg., R.S., ch. 1051, §§ 1–2, 2005 Tex. Gen. Laws 3512, 3512–13; *Gulley v. State Farm Lloyds*, 350 S.W.3d 204, 207–08 (Tex. App.—San Antonio 2011, no pet.) (relying on legislative history indicating appeals under section 51.014(d) are proper when trial court rules on pivotal issue in case about which there is legitimate disagreement and citing cases in which interlocutory appeal under section 51.014(d) was deemed proper).

---

[3]To the extent that appellants are challenging the reliability of Maibach's testimony because it is based on speculation and conjecture, and therefore no evidence, it would still be an appropriate matter for summary judgment. *See, e.g.*, *Plunkett v. Conn. Gen. Life Ins. Co*., 285 S.W.3d 106, 112–13 (Tex. App.— Dallas 2009, pet. denied).

Here, whether Maibach's expert opinion that a willing buyer would not assign any future income value to the front two buildings on the property (because of the threat of future annexation and resulting nonconforming use) utilizes a proper measure of damages is a controlling question of law—as presented in the parties' competing summary judgment motions—because the damages to be assessed for the effect of the taking on the remainder property is the sole issue left in the case. Thus, we will review the parties' agreed issue.

**Applicable Law**

In the recent case of *State v. Petropoulos*, the Texas Supreme Court explained,

> In *Westgate* we reaffirmed the longstanding rule that the measure of compensation in a partial-takings case is "the market value of the part taken plus damage to the remainder caused by the condemnation." 843 S.W.2d at 456. We outlined two acceptable methods for calculating damages in a partial takings case. The first method measures damages by the fair market value of the part taken plus damages to the remainder caused by the condemnation. *Id*. (citing *Buffalo Bayou, Brazos & Colo. Ry. Co. v. Ferris*, 26 Tex. 588, 603–04 (1863)). The second method measures damages by the difference between the market value of the entire tract before the taking and the market value of the remainder after the taking. *See id*. (citing *Uselton v. State*, 499 S.W.2d 92 (Tex. 1973)). The second method is preferable when the part taken does not constitute a separate economic unit, such as when the tract taken is small or irregularly shaped. *Id*. at 456–57.

346 S.W.3d at 530 (footnote omitted). Market value is "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001) (quoting *State v. Carpenter*, 89 S.W.2d 979, 979 (Tex. 1936)).

8

Here, Maibach testified that the market value of the entire property before taking was $598,000 and that after the taking, the market value of the remainder was $350,000; thus, he employed the second *Westgate* method for valuing the damage to the remainder at $248,000. In calculating the market value of the remainder after taking, he used two of three traditional methods of determining market value: the comparable sales method and the income method. Under the income method,[4] he determined that as of the date of taking a buyer would not attribute any value to the two buildings because they would be unleasable, and he opined that the resulting lost income from the two buildings would be $248,000. *City of Harlingen*, 48 S.W.3d at 183 ("The income approach to value is appropriate when property would, in the open market, be priced according to the income that it already generates.").

Maibach determined the property's lost income attributable to the front two buildings by using a capitalization rate of eight and half percent. Thus, he determined that if the taking had not occurred, the two buildings would be valued at $39.97 per square foot or $248,000 based on an eight and a half percent rate

---

[4]The income method of appraising property involves estimating the future income of the property and applying a capitalization rate to that income to determine market value. *Polk County v. Tenneco, Inc*., 554 S.W.2d 918, 921 (Tex. 1977). The capitalization rate may be defined as the rate of interest investors would require as a return on their money before they would invest in the income-producing property, taking into account all the risks involved in that particular enterprise. *Id*. The income approach thus involves an estimate of two variables, future income and the capitalization rate, which are used to find the market value figure. *Id*.

of return.  His testimony that an investor would place no value on those buildings as of the date of taking is based on the assumption, then, that an investor would consider those buildings wholly incapable of producing income as of that date because of the potential of annexation, no matter when it occurred.

**Analysis**

The question of law in this case is not whether an expert may consider the effect of the possibility, or even inevitability, of annexation on remainder property when calculating damages to remainder property; an expert should be able to do so.  *See, e.g.*, *City of Abilene v. Blackburn*, 447 S.W.2d 474, 475–76 (Tex. Civ. App.—Eastland 1969, writ ref'd n.r.e.) (holding that trial court properly allowed testimony about effect on market value of possibility of future annexation of property because, if annexed, the property would be subject to aerial easements and zoning restrictions upon completion of airport expansion).  The question is whether an expert can testify to a damage amount that is based on the expert's opinion that remainder property loses some or all of its income producing potential, and thus market value, as of the date of taking due to the mere potential of future annexation.

In *Petropoulos*, the supreme court determined that the property owner's expert's testimony about damages to the remainder property was no evidence of damages because decreased visibility and altered accessibility to remainder property are not compensable damages to remainder property.  *Id*. at 532–33. And in the older case of *Texas Electric Service Co. v. Campbell*, the supreme

10

court held that several witnesses' testimony that the possibility of growth of the town of Kermit closer to the remainder property would impact the usage of remainder property was no evidence of damages to the remainder. 336 S.W.2d 742, 744–45 (Tex. 1960) ("We regard all of this evidence based on possibilities rather than reasonable probabilities, . . . and on speculation, as incompetent. It constitutes no evidence to aid the jury in the performance of its fact finding function.").

In *Coble v. City of Mansfield*, this court held that Mansfield was entitled to a partial summary judgment precluding the property owner from offering evidence that he would have to build a screening wall on part of his remainder property if he developed it as a residential subdivision because the summary judgment evidence showed, among other things, that the owner did not intend to develop the remainder as a residential subdivision and had applied for a zoning change to commercial. 134 S.W.3d at 455–58. Thus, the expert's testimony regarding the damages incurred by the necessity of building a screening wall was "based on speculation and conjecture," and the property owner was precluded from recovering such damages as a matter of law. *Id*. at 451, 457.

However, Maibach's testimony here is that, based on his over twenty years of experience as an appraiser, a willing buyer would presume that the front two buildings would not generate any income as of the date of taking (regardless of whether they were at that time actually producing income)—because of the possibility that an annexation would force a change in use of the buildings—and

11

would therefore assign no value to those buildings in a purchase.[5] Thus, Maibach's testimony is not based on a speculative or remote possibility—the property's market value at the time of a future annexation—but rather, it is based on an assessment of the current value a willing buyer and seller would place on the remainder property as of the date of taking because of the perception that annexation could limit the property's use.[6] *See Blackburn*, 447 S.W.2d at 475–76. Whether this opinion is correct is not for this court to resolve; whether it is based on a proper measure of damages is. *See, e.g.*, *Kerr-McGee Corp. v. Helton*, 133 S.W.3d 245, 254 (Tex. 2004) ("In reviewing the reliability of expert testimony, the court is not to determine whether the expert's conclusions are correct; rather, the court should determine only whether the analysis used to reach those conclusions is reliable."), *abrogated in part on other grounds by Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 18–19 (Tex. 2008). We conclude and hold that the trial court did not err by granting Ledrec's motion for summary judgment and denying appellants' because—regardless of

---

[5]Maibach testified that he looked at the value of the remainder from both the buyer's and seller's perspectives and that the "market value" of the remainder property as of the date of taking was $350,000.

[6]The difference is subtle; although Maibach's report attached as summary judgment evidence states that the taking would actually render the front two buildings functionally obsolete and unleasable as of the date of taking—as opposed to stating that a willing buyer and seller would *presume* that the buildings would become functionally obsolete and unleasable as of the date of taking—his deposition testimony, construed in Ledrec's favor, is that he considered both a buyer's and seller's positions in making his determination of market value.

12

the correctness of Maibach's opinion—it is based upon a proper measure of damages for the remainder property.  *See, e.g.*, *Petropoulos*, 346 S.W.3d at 530.

We overrule appellant's issue and affirm the trial court's interlocutory order.


                                              TERRIE LIVINGSTON
                                              CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

DELIVERED:  April 12, 2012